Next, we have Proctor v. Bisignano. Good morning, Your Honors, opposing counsel. May it please the Court, this case concerns—sorry—Allison Young for Appellate Katherine Proctor. This case concerns a finding that jobs exist in significant numbers in the national economy that Ms. Proctor can perform. Specifically, this case concerns the Commissioner's failure to address rebuttal evidence submitted to the Appeals Council. Just as a brief refresher, the occupations at issue in this case are an optical final assembler, a touch-up screener of circuit boards, and an eyeglass frame polisher. The vocational expert testified to relying on multiple sources, including the Department of Labor, Bureau of Labor Statistics, collaboration with head economists in each state and with other vocational experts in the nation, and then when asked if he used any sort of program, he confirmed using Job Browser Pro. So counsel submitted rebuttal evidence generated through Job Browser Pro, showing that there were significantly less jobs than the vocational expert indicated. The vocational expert's testimony would suggest somewhere north of 115,000 jobs between these three occupations. Counsel's rebuttal evidence showed 2,247 between the three, so obviously that's about 2 percent of the vocational expert's estimate. The Appeals Council incorporated this evidence into the record, making it, in effect, a part of the body of evidence on which the judge's decision was based, did not otherwise address it. So there's a line of cases on counsel's ability to rebut vocational evidence. It really starts with Buck v. Berryhill back in 17, wherein the representative submitted evidence from the same source that the judge, or sorry, that the vocational expert had relied on that showed a vast discrepancy, and the court remanded. Shortly thereafter, there was Scheibe v. Berryhill indicating that rebuttal evidence has to be presented during the administrative process. It cannot arise in the first instance in federal court. After that, there was a turning point in Kilpatrick, where the court actually announced a standard, which is that in order to be required to consider evidence, rebuttal evidence, it must be significant and probative. The Kilpatrick court noted that the evidence in Buck, because it came from the same source that the vocational expert used, clearly met that standard. May I ask, here it seemed like there were multiple sources used. So when the questioning is, well, what's the source of your job numbers, and I say, okay, multiple sources, DOL, Bureau of Labor Statistics, Head Economist, et cetera. Do you use any program like Job Browser? I do. I use printing of Job Browser Pro. So there's this kind of a constellation of foundation for the opinion. How does that figure in here when we don't know exactly which numbers were the foundation? Well, I think that goes to Apelli's primary argument is that our rebuttal evidence didn't replicate the vocational expert's method. And that, I think, is a central point of contention between the parties. I don't believe we need to replicate the vocational expert's method. I think that's based on a misunderstanding of the case law. The requirement is that our rebuttal evidence be significant and probative. If the court meant that to mean we have to replicate the vocational expert's method, I think the court would have said that at some point, and the court didn't say that. Is it actually possible? I mean, here we have approved vocational experts relying on, essentially, their personal knowledge, their connections, their conversations they may have had with other experts. And that seems actually something that no advocate, you know, no representative could actually replicate, which then would mean there's a whole category of vocational expert testimony that cannot be rebutted. I don't think we've ever suggested that that should be the case. I would agree with Your Honor on that point. As noted in the brief, Skiltrans Job Browser Pro does derive its numbers from the Department of Labor, Bureau of Labor Statistics, and it is continuously peer-reviewed, which means, in effect, it is a process that's collaborating with other vocational experts in the nation. I'm having difficulty conceiving of how counsel could effectively consult with state heads of economies, and even if we could, I'm not sure how we could document that process to support satisfaction. So my understanding is your position would be you can't replicate the process, but you've replicated essentially part of what the VE relied on, and that's at least rebuttal evidence, in which case then it would be on the agency to consider it and decide whether that's, you know, whether there's then a response to that rebuttal that still substantiates the VE's numbers. Is that fair to say what you think should happen next if we agreed with you? I think that's fair to say. What should happen next is that this evidence should be at least addressed. I want to reiterate, it doesn't make sense to require that the rebuttal evidence replicate the vocational expert's process. The Supreme Court in Bistec v. Berryhill, which kicked a lot of this off really, had said that there's no affirmative obligation for vocational experts to even explain their underlying data or reveal that data, and the Supreme Court in Bistec acknowledged that vocational testimony itself might be so feeble or contradicted that it would fail to clear the substantial evidence bar. In that case, obviously it would not make sense to require rebuttal evidence to replicate that feeble process. You know, we're kind of in an odd situation because there was sort of a next round of questioning, okay, here's the things I looked at, DOL, this pro-browser, job browser, and then I looked at all that, but, you know, did you rely on the job browser? We don't know that. I mean, it is this constellation, so I think you've presented kind of an unusual case here where you don't have to impugn this uncertain, but if you don't, then you're stuck, right? Right. But from our point of view, we're looking at it a little bit differently, and that is, well, is there substantial evidence? So that's really the lens that we're looking at. Could you address that? I would. I think this case is like White, which is one of the two most recent cases on this line. In White, rebuttal evidence was presented from Job Browser Pro, which the court noted was a case widely relied on by vocational experts in social security cases, and indeed by the expert in that case. The same is true here. Granted, this vocational expert presumably had other sources to draw on, but those sources don't give DOT-specific numbers. The Department of Labor doesn't rely on the DOT anymore. It's 30 years old. So in order to get DOT-specific numbers, you either have to come up with some method to translate the data from the Department of Labor, or you have to use a program that does it for you, such as Job Browser Pro. What is the specific relief that you think is warranted here? What's warranted here is remand for further proceedings to investigate this rebuttal evidence and or get new vocational testimony that doesn't rely on those sources. So when you say investigate this rebuttal evidence, what does that mean? The commissioner needs to address in the first instance whether this vocational rebuttal evidence undermines the vocational testimony or not. They haven't done that. They haven't addressed it at all. They've just put it in the record. So in theory, right, they could have, I assume the VE, they could say this isn't, you know, this rebutts part of the VE's evidence, but, you know, the VE in theory could have said, you know, I considered those numbers, but then based on X, Y, and Z sources, those numbers got revised to, that's my, how I ended up with higher numbers. But they have to have some sort of, offer some sort of explanation. Or they could say I ran Job Browser Pro, and these are the different numbers I came up with, and, you know, this is why counsel's numbers are incorrect. That's one possibility. I don't want to predict what findings the appeals counsel would or could make, and depending on what findings they would or could make, we might be here having a different argument as to whether those findings are sufficient. But in theory, I'm just saying in your mind that it's addressing your rebuttal evidence could be any one of those things. Yes. Or it could be that's actually correct, and we need to go back and get more explanation. Depending on how they addressed it, we might still be here on appeal, but they didn't address it at all. And that inexorable zero is why I'm standing here today. The only question is whether it's significant and probative enough that they needed to do to address it better.  Okay. I have time for just one final point here, which is that the question here is whether this evidence that counsel generated from Job Browser Pro meets the significant and probative standard. In my mind, I can't see how that could turn on whether the vocational expert also used that program. Job Browser Pro is either reliable or it isn't, and that doesn't depend on whether this vocational expert happened to use it. Because it could impeach the data whether the VE used it or not, you're saying. Right. In this case, the vocational expert did use it, at least in part, and so it does have some impeachment value, but it also independently is, I think, significant and probative. I know we'll give you time for rebuttal, but if the VE had not used Job Browser Pro at all, you're saying, but you have this otherwise widely accepted source of information that you can show you used in a way that makes sense and produced intelligible numbers, that would still be significant and probative. I think it would. But technically, we don't have to address that question because it was used. I entirely agree. Thank you.  I am done.  Good morning, Your Honors. May it please the Court. Lindsey Payne on behalf of the Commissioner of Social Security. Now, this Court has never remanded based on alternative numbers presented for the first time to the Appeals Council that used a methodology different from that used by the vocational expert. However, I do want to address some of the concerns that were raised during my opponent's opening argument. First of all, as Judge McCune noted, there were a constellation of sources used here that were not used by a claimant's attorney when they performed their own search from Job Browser Pro. We have an expert with more than 30 years of experience that used a variety of sources. And I know the Court raised the point that with some of these sources, it wouldn't always be possible for a claimant to exactly duplicate the vocational expert's methodology. And that's why, contrary to claimant's characterization of the Commissioner's argument, we are not proposing a bright-line categorical rule that says any one of the factors the Court has set forth in cases such as Wishman and Kilpatrick were absolutely required. But it is noteworthy the Court has not ever remanded when a different methodology was used. And it's also difficult to imagine a case where the evidence would be sufficiently probative to undermine the vocational expert's testimony when there is neither the same methodology nor any particular expertise associated with the alternative job numbers that have been submitted. Let me just interrupt there as a matter of common sense. I recognize that the Social Security proceedings are their own sui generis operation. But if you have a set of testimony and then you offer some rebuttal or attack on that, you don't have to necessarily do it one for one. It doesn't mean that it couldn't be undermined. So that's true in general evidentiary construct. Why wouldn't that be here? It may not be perfect. It might not even work. But why wouldn't that be considered? Well, so we're in a situation where no cross-examination was made by Clayman's attorney of the vocational expert regarding how he used the sources that he used. No attempt was made to present any of this evidence to the ALJ despite the fact that two months passed between the ALJ hearing and the ALJ decision. There was plenty of opportunity to get more information from the vocational expert, Mr. Corbin, if wanted. And that is not 100% preclusive of the Clayman's arguments in this case. However, the court recognized in Kilpatrick that a balance must be struck in cases like these where Clayman has not availed herself of the opportunities to develop a record. She could have asked, even without the ability to pull up alternative job numbers on the fly, could have asked Mr. Corbin how he used Job Browser Pro. How did he use these other sources? And it is important to note that the fact that she didn't ask those questions make the rebuttal evidence less significant and probative. Well, for example, we can imagine a scenario where not the exact same methodology is used by the Clayman for their alternative numbers, but they've developed enough of a record that it does undermine the reliability of what the vocational expert did in this case. And that's not the situation here. And so now we're left with the significant and probative evidence standard. And if we don't apply... So, can I just stop you there? So you're not saying that the counsel would have had to go further. You're just saying that as far as they went, that wasn't enough? Yes, Your Honor. That they had the opportunity to build a record that showed that their alternative evidence was probative. They did not avail themselves of that opportunity. So now we have a situation where... I'm sorry to interrupt, but it's confusing because the case law very clearly says, because the way that these hearings work, there is no advance notice, essentially, of what the V is going to testify about their method, about the numbers, about the jobs they're going to identify, which is why we said the claimant can submit rebuttal evidence after the hearing is done. That's very clear in our precedent. And then we say, if it's significant and probative, rebuttal evidence has to be addressed. So it seems to me, in that situation, the way things work, I don't understand why more questions at the hearing would affect whether the post-hearing rebuttal evidence that specifically addresses their jobs and the numbers identified by the VE would not be significant and probative. There's other ways that they could have submitted more probative evidence, even if they didn't avail themselves of opportunities before the ALJ. So they could have provided... You're saying because there could have been more? To me, there's this foundational question that you're skipping, which is, the rebuttal evidence that is offered, we have to address. Was that significant and probative? And what I hear you keep saying is, well, they could have done other things that would have also been significant and probative, but I guess I still want to understand why these particular information was not, in your view, not significant and probative. And I understand you're saying that you're not making a categorical rule, that it has to exactly match the method that was used by the VE, so let's put that to the side. I understood your other argument in the brief was that there wasn't expertise demonstrated by counsel in using JobBrowserPro, and I understand the response to be, this is a fairly straightforward program, I've explained my methodology in a rational way that anyone can understand, and the numbers are comprehensible. So what is your response to that? What other level of expertise is actually necessary to demonstrate for these numbers to be significant and probative? Well, we don't actually have comprehensive information about how these numbers were generated in JobBrowserPro. So while Clayman's attorney has asserted that they ran a search using the DOT numbers and without applying any filters, that's not exactly how that program works. There are various options for how to run searches in that program. There are always variables, and that's the very reason that the court in Wishman pointed out, it is merely a tool that must be used appropriately. And in the ordinary run of business, that would ordinarily require expertise. Nothing in this case takes it outside of that normal rule. What was presented here is very similar to what was presented in Wishman, which the court found was not probative. And on that point, I'd like to highlight that although there were some other problems with the printouts in Wishman, the DOT number specific national job numbers were clearly labeled and presented in the same way as they were here. The court describes what was presented in Wishman at page 503 of that opinion in detail. And that is the exact same information, those DOT specific U.S. national numbers that Clayman is attempting to rely on here. And that is the exact same results that the Wishman court called not comprehensible to a layperson because it is just raw data and it does not show what options were selected in the program to generate that data. If Clayman's arguments were accepted, there would be no reason why we would ever need vocational experts in Social Security cases whatsoever. A layperson has run a search without any foundation from a vocational expert establishing that this is an appropriate way to use the program. Just because it's used reliably in some cases doesn't mean it was used reliably here. Does that go to the weight as opposed to the trying to evaluate it? I would say it goes to whether they've crossed the threshold for probativeness in this case. It needs to have certain indicia of reliability and undermine the vocational expert's testimony sufficiently that we can say there's a reasonable probability that if the ALJ had these three pages of printouts, the outcome of the case would have been different. I guess what I find troubling is if the BIA had simply said, you know, job pros are pro, you know, these filters needed to be put on, you know, the counsel said that they ran the search without any filters, that was, it's not probative for these reasons, I don't think we'd be here, right? But there's absolutely no explanation, I mean, it is rebuttal evidence. It may not be ultimately enough to actually rebut, but it seems to me there was an explanation given, this is a widely used program, here's how I did it, here's how I generated the numbers, you know, these are the numbers I ended up with. I think in any normal evidentiary hearing, there would be a response that doesn't actually, you know, undercut these numbers for these reasons or it does and we need to go back and do more. But we have no explanation, otherwise what seems to me to be something fairly commonsensical. I can understand it, right? I understand what, I'm not an expert, but I understand what counsel is saying they did and the results that they produced and it seems to me on its face to be significant and probative and I have no response from the agency explaining why that's incorrect. I mean, this is the exact same issue that the court addressed in Kilpatrick and said that they didn't, because of the significant and probative standard that you have to meet that standard for it to have been required for the agency to specifically give an in-depth explanation of why it was not accepted and the court went so far in Kilpatrick, which is a published decision, is saying ALJs don't have to address evidence that is presented by a lay witness that the lay witness was not competent to present. We have an expert with 30 years of experience versus someone with no expertise running a search, which again... So is it your view that what would counsel have to do to show that they were sufficiently, they used, or is it you're saying counsel could never do it unless they were essentially qualified as an expert witness on using Job Browser Pro? I mean, is there... What would, in your view, a claimant have to do to show the sufficient expertise to make this significant? I don't think we've ever said, you know, set out that counsel could not run a program like this and come up with an adequate explanation. We've given an example in which they didn't do enough when their results were not explained enough. So assuming that nothing more was done at the hearing as we have here, and it's just based on the face of what was submitted to the appeals counsel, one, there could be the situation where they do get an explanation from someone with expertise other than counsel, and that would go a long way towards probativeness, and that is something that attorneys do in some cases. They consult their own experts, so that's something that they could have done that might meet the probativeness standard on the facts of that case. Alternatively, where we don't have any sort of expert involvement in the case, then they could use the same methodology that was used by the vocational expert at the hearing, which is, you know, what has happened in every case that the court has remanded on this issue. They've always used the exact same method that was used by the vocational expert. And to be clear, the court has been, you know, clear in Kilpatrick and honestly in BSTEC, and this is a distinguishment I wanted to make from what Klayman said in the reply brief, BSTEC and Kilpatrick do not stand for the proposition that a vocational expert never needs to reveal their methodology. If Mr. Corbin had been asked how he used his sources, he would have had to explain that, but BSTEC and Kilpatrick do make clear that the vocational expert does not need to reveal all of their data and that even if the Klayman is not able to exactly duplicate the vocational expert's methodology because they don't have that data, that doesn't mean that simply running numbers through Job Browser Pro is enough to undermine, to be probative enough where you have a case like here with an accomplished expert using a variety of sources. Okay, would you comment on counsel's statement that at this point the Department of Labor approach or statistics have been deemed to be essentially outdated? Well, the DOT is outdated, which is part of why we do need vocational experts to interpret data and why in a case like this, it was very much to everyone's benefit that Mr. Corbin used a variety of sources that were current. However, the Department of Labor, you know, there are still current labor statistics, they just aren't within the DOT. If there's no further questions from the court, we would ask you to affirm the district court's decision upholding the ALJ decision. Thank you. Thank you. I'll give counsel two minutes for rebuttal. Thank you, Your Honor. There are two primary things that a vocational expert does at a hearing. One, perhaps the most important is to identify jobs that the claimant can do within the residual functional capacity. The vocational expert here identified these three jobs, and we're not contesting the identification of the jobs. Then the question becomes, well, do those jobs exist in significant numbers? That's a fact. It's not a matter of scientific opinion. It may be difficult to count how many optical final assemblers there are in the nation, but there is a factual number of how many there are, and the vocational experts seem to think there were nearly 60,000 of them. JobBrowserPro says there are 26. That's a difference of a factor of 2,000. There's some greater expertise needed to use JobBrowserPro in terms of selection of filters. I understand you submitted it with an explanation of how you did it. You put in the DOT numbers. You said no filters, and you got numbers. That seems fairly straightforward to me in terms of my lay understanding of how any database would work. I suppose the response is, if you had asked, the VE would have said, I use X, Y, and Z filters, or I had done something else when I used JobBrowserPro, or that could be an expert would have made some other choices in JobBrowserPro. Can you address that? I don't know what other choices the expert could have made to turn 26 jobs into 60,000. Filters would reduce the number, as far as I understand it. They'd have to be adding other industries and saying, oh, these also exist in this industry, even though JobBrowserPro didn't say they do. Oh, they exist in this industry as well. And maybe he can back that up somehow. I don't know. That might be something that could be done to address this evidence as rebuttal, and perhaps might happen on demand. The fact remains that this rebuttal evidence, as far as it goes, shows a vast discrepancy between the vocational expert's number and the number generated directly by JobBrowserPro, and that discrepancy has not been addressed by the agency. So I just want to ask another question, because the VE says, well, not just JobBrowserPro, but I also consulted with head economists in each state that deal with employment numbers. What do you do with that? I honestly don't know what to do with that. There's no way we could replicate that process, and even if we could replicate that process, I don't see how we'd document it to the court that we did. The idea that we could, to require that would be to essentially make vocational expert testimony incontestable. If there's nothing further. Nothing further. Thank you, counsel, for your helpful arguments. And we are adjourned for today. The week. We're done. Thank you. All rise.
judges: McKEOWN, SUNG, Fitzwater